DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**AMERICAN PLASTIC EQUIPMENT, INC.,**

                **Plaintiff,**                    **Civil Action**

**v.**                                             **No. 07-2253-DJW**

**TOYTRACKERZ, LLC, et al.,**

                **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss Counts II-IX for Failure to State a Claim (doc. 20).  For the reasons set forth below, the Court will grant the motion and dismiss Counts II-IX with prejudice.

## I.    Nature of the Matter Before the Court

Plaintiff American Plastic Equipment, Inc. ("American) brings this action against Defendants Toytrackerz, LLC ("Toytrackerz") and Noah Coop, who Plaintiff alleges is a managing member of Toytrackerz.  Plaintiff asserts the following claims against Defendants:

        Count I - Copyright Infringement in violation of 17 U.S.C. § 501

        Count II - Trademark Infringement in violation of 15 U.S.C. § 1501

        Count III - Federal Dilution in violation of 15 U.S.C. § 1125(d)

        Count IV - Trade Dress Infringement in violation of 15 U.S.C. § 1125(a)

        Count V - Federal Cybersquatting in violation of 15 U.S.C. § 1125(d)

        Count VI - Unfair Competition

Count VII[1] - Request for an order compelling the Commissioner of Trademarks to cancel Toytrackerz' registration of certain trademarks and restore American's registration in them.

Count VIII - Request for an order compelling the Commissioner of Trademarks to refuse registration of Toytrackerz' pending applications to register trademarks

Count IX - Trademark Infringement of "Fort Apache" trademark.

Defendants move to dismiss Counts II-VI on the basis that they are compulsory counter-claims that American voluntarily dismissed without prejudice in a prior Kansas state court action between the parties and cannot be reasserted in this action. Defendants also move to dismiss those same claims, along with Counts VII-IX, on the basis that the doctrine of collateral estoppel bars them from being relitigated in this action because the issue of who has a protected and actionable interest in the disputed trademarks was resolved against American in the prior state action. Finally, Defendants move to dismiss Counts II-IX on the basis that the doctrine of res judicata bars their reassertion in this action because those same claims were litigated through to a final judgment in the state action.

## II.    Standard for Ruling on a Motion to Dismiss Pursuant to Rule 12(b)(6)

A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate only when it is apparent that a plaintiff can prove no set of facts that would entitle it relief.[2] Consistent with the well-established standard for evaluating a Rule 12(b)(6) motion to

---

[1]Plaintiff's Complaint contains two counts labeled "Count VII." The first is entitled "Cancellation of Registered Trademarks," and the second is entitled "Restoration of Previously Canceled Mark." For clarity's sake, the Court has combined them into one count that will be referred to as "Count VII."

[2]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ledbetter v. City of Topeka,* 318 F.3d 1183, 1187 (10th Cir. 2003).

dismiss, the court accepts as true all well-pleaded factual allegations in the plaintiff's complaint.[3] A court's function in ruling on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial or whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support its claims.[4]

Ordinarily, consideration of material outside of the pleadings requires the court to convert the motion to one for summary judgment and afford the parties notice and an opportunity to present relevant evidence.[5]  Facts subject to judicial notice may, however, be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into one for summary judgment.[6]  This allows the court to take judicial notice of its own files, records, and pleadings, as well as facts which are a matter of public record.[7]  Thus, in resolving the motion, the Court will consider the other pleadings filed in this action, a related action also filed in this Court and the United States District Court for the Western District of Missouri, and an action filed in the District Court of Bourbon County,

---

[3]*Moya v. Schollenbarger,* 465 F.3d 444, 455 (10th Cir. 2006) (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998)).

[4]*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982)).

[5]*Tal v. Hogan*, 453 F.3d 1244, 1264, n.24 (10th Cir. 2006) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

[6]*Id.* (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004)).

[7]*Id.* (*citing Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)).

Kansas.[8]  The Court's consideration of those pleadings, however, will be limited to their contents, and they will not be relied upon to prove the truth of any matters asserted therein.[9]

## III.    Background Information

The first lawsuit involving American and Toytrackerz was a declaratory judgment action that Toytrackerz filed against American in the District Court of Bourbon County, Kansas ("State Court Action") on January 6, 2006.[10]  In that action, Toytrackerz filed a "Petition for Declaratory Judgment of State and Common Law Non-Infringement of Trademarks," in which it asserted that it sells certain products in commerce under the trademarks "Circle X Ranch," "Apache Fighters," "Best of the West," "Johnny West Adventure," "Johnny West," and "Marxman" or "Marxman Bros."[11]  The Petition also asserted that Toytrackerz sells products using Internet domain designations "www.circlexranch.com" and "www.markmanbros.com."[12]  In addition, the Petition stated that by way of a December 3, 2005 "cease and desist" letter, American had accused Toytrackerz of trademark infringement and had threatened legal action, including criminal prosecution, against Toytrackerz.[13]

---

[8]*See Raab Sales, Inc. v. Domino Amjet, Inc.*, 530 F. Supp. 2d 1192, 1194, n.1 (D. Kan. 2008) (considering contents of pleadings from an Illinois state court action in ruling on Rule 12(b)(6) motion to dismiss).

[9]*Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jarvais*, 297 F.3d 1182, 1188 (11th Cir. 2002) (public documents of which the court takes judicial notice "may only be considered to show their contents, not to prove the truth of matters asserted therein.").

[10]*See* Pet. for Declaratory J., Case No. 06 CV 0004, attached as Ex. E. to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

[11]*See generally id*.

[12]*Id.* at ¶¶ 8 & 10.

[13]*Id.*, ¶ 11.

According to the Petition, the allegations contained in American's "cease and desist" letter "raise[d] the scope, validity and enforceability of [American's] alleged trademark interests in 'Circle X Ranch', 'Fort Apache Fighters', 'Best Of The West', 'Johnny West', 'Johnny West Adventure', 'Marxman Bros.' and 'Marxman'."[14]   Toytrackerz alleged in its Petition that American had no protected or actionable interests in the above-cited trademarks "under state or common law."[15]

Toytrackerz requested the following relief:  "Entry of Judgment that [American] is without right or authority to threaten or maintain suit against [Toytrackerz] for alleged trademark infringement of rights claimed by [American] under state or common law" for the above-cited trademarks.[16]   Toytrackerz also requested a preliminary and permanent injunction enjoining American from initiating or threatening trademark infringement litigation against Toytrackerz and from using any form of media to state or suggest that Toytrackerz had engaged in trademark infringement.[17]

On February 8, 2006, American removed the State Court Action to this Court.[18]   American filed an Answer and Counterclaim on March 1, 2006, in which it asserted a counterclaim against Toytrackerz and new parties, Noah and Terri Coop, whom American alleged are principals of Toytrackerz.[19]

---

[14] *Id.*, ¶ 13.

[15] *Id.*, ¶ 16.

[16] *Id., Wherefore Clause ¶* i.

[17] *Id.*, Wherefore Clause, ¶¶ ii & iii.

[18] *See Toytrackerz, LLC v. American Plastic Equipment, Inc.*, Case No. 06-cv-2042-DJW.

[19] Answer and Countercl., Case No. 06-cv-2042-DJW (doc. 4) at ¶ 3, p. 3.

On March 9, 2006, Toytrackerz filed a motion to remand the case to state court. This Court granted the motion, finding that federal question jurisdiction was lacking because Toytrackerz' claims were based on the Kansas Trademark Act and Kansas common law.[20] The Court also found diversity jurisdiction was lacking.[21] On August 30, 2006, the Court remanded the case to the District Court of Bourbon County.[22]

On October 31, 2006, American re-filed its Answer and Counterclaim in the State Court Action.[23] That counterclaim ("Counterclaim") was identical to the counterclaim American had filed in the removed federal court action. The Counterclaim consisted of seven separate counts:

Count I - Copyright Infringement in violation of 17 U.S.C. § 501

Count II - Trademark Infringement in violation of 15 U.S.C. § 1501

Count III - Federal Dilution in violation of 15 U.S.C. § 1125

Count IV - Trade Dress Infringement in violation of 15 U.S.C. § 1125(a)

Count V - Federal Cybersquatting in violation of 15 U.S.C. § 1125(d)

Count VI - Unfair Competition in violation of 15 U.S.C.§ 1125(a)

Count VII - Kansas Unfair Competition

---

[20]*See* 8/30/2006 Order granting Mot. to Remand (doc. 48), Case No. 06-cv-2042-DJW.

[21]*Id.*

[22]*See id.* and 8/31/2006 Judgment (doc. 49), Case No. 06-cv-2042-DJW.

[23]*See* Answer and Countercl., Case No. 06 CV 0004l, attached as Ex. C to doc. 21.

On March 9, 2007, American filed the instant action.  It was initially filed in the United States District Court for the Western District of Missouri, Case No. 07-cv-01885-SOW.  It was ultimately transferred to this Court and denominated Case No. 07-2253-DJW.[24]

The State Court Action was still pending when Plaintiff filed the instant action.  On June 7, 2007, American filed in the State Court Action a pleading entitled "Voluntary Withdrawal of Answer, Counterclaim and Third Party Claim."[25]  In that pleading, American asked that its Answer, Counterclaim, and Third-Party Claims be dismissed without prejudice. The pleading stated as follows:

> In open court on May 1, 2007 [American] announced the voluntary withdrawal of its Answer, Counterclaim and third-party claim, coupled with its consent to judgment under Plaintiff's Petition, which exclusively seeks relief under Kansas law.  While [American] has no objection to the entry of an order declaring the rights of the parties hereto with regard to Kansas law, [American] persists in the enforcement of its rights under federal law.  In that regard, on March 7, 2007, [American] filed a Complaint with the United States District Court for the Western District of Missouri seeking to enforce its rights under federal law.[26]

On August 1, 2007, a Journal Entry of Judgment, signed by the parties and the state court judge, was filed in the State Court Action.  It provided as follows:

1. The Court has jurisdiction over the subject matter and parties to this action.
2. American Plastic Equipment, Inc. has no protected or actionable interest in the trademark "Circle X Ranch" [word mark] under K.S.A. § 81-202 et seq. or Kansas common law;
3. American Plastic Equipment, Inc. has no protected or actionable interest in the trademark "Fort Apache Fighters" [stylized logo] under K.S.A. § 81-202 et seq. or Kansas common law;

---

[24]The action was transferred to this Court on June 11, 2007.  *See* June 11, 2007 Order transferring venue, Case No. 07–cv-0185-SOW, attached as Ex. P. to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

[25]*See* Voluntary Withdrawal of Answer, Countercl. and Third Party Claim in Case No. 06 CV 0004, attached as Ex. L. to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

[26]*Id.*

4.     American Plastic Equipment, Inc. has no protected or actionable interest in the trademark "Best of the West" [stylized logo] under K.S.A. § 81-202 et seq. or Kansas common law;

5.     American Plastic Equipment, Inc. has no protected or actionable interest in the trademark "Johnny West Adventure" [stylized logo] under K.S.A. § 81-202 et seq. or Kansas common law;

6.     American Plastic Equipment, Inc. has no protected or actionable interest in the trademark "Johnny West" [standard word mark] under K.S.A. § 81-202 et seq. or Kansas common law;

7.     American Plastic Equipment, Inc. has no protected or actionable interest in plaintiff's use "Marxman" and "Marxman Bros." under  K.S.A. § 81-202 et seq. or Kansas common law.

8.     American Plastic Equipment, Inc.'s Answer, Counterclaim, and third-party claims are hereby dismissed, without prejudice, in their entirety.

9.     All other pending motions are hereby overruled and dismissed as moot.[27]

Counts I - V of the Counterclaim, which was dismissed in the State Court Action, are virtually identical to the claims asserted by American in this case in Counts I - V for copyright infringement, trademark infringement, federal dilution, trade dress infringement, and federal cybersquatting.  The Counterclaim differs somewhat from the instant action, in that the Counter-claim contains two counts for unfair competition:  one is pursuant to federal law (Count VI) while the other is pursuant to Kansas law (Count VII).  In contrast, the instant action contains only one count for unfair competition (Count VI) and does not distinguish between federal and state law.  The Counterclaim also differs from the instant action in that it contains no claims relating to the cancellation, restoration, or refusal to register trademarks as found in Counts VII-VIII of the instant action.  The Counterclaim also differs in that it contains no claim like that found in Count IX of the instant action for infringement of the "Fort Apache" trademark.

---

[27]8/1/2007 Journal Entry of J., Case No. 06 CV 04, attached as Ex. A to Defs.' Br. in Supp. of Mot. to Dismiss (doc.21).

IV.    **Should Counts II-VI Be Dismissed on the Basis That They Were Compulsory Counterclaims in the State Court Action and May Not Be Relitigated in the Instant Action?**

A.    **Summary of the Parties' Arguments**

Defendants move for dismissal of Counts II-VI on the basis that they were brought as compulsory counterclaims in the State Court Action, and because American withdrew and voluntarily dismissed them, American is barred from relitigating them in the instant action. Defendants assert that American's Counterclaim was a compulsory counterclaim with respect to Defendant's claims in the State Court Action because they both arose out of the same transaction or operational set of facts. Defendants argue that "the heart of Toytrackerz' claim in the State Court Action was its assertion of ownership of six trademarks and the dispute caused by [American's] cease and desist letter."[28] Defendants recognize that Toytrackerz' state law declaratory judgment claims were centered on Kansas statutory trademark law[29] and Kansas common law, while American brought its Counterclaim pursuant to the federal law.[30] Defendants maintain, however, that the compulsory nature of a counterclaim is not based on the theory of law pled, but rather on the nature of the transactions at issue. They argue that "the factual nexus" of both Toytrackerz' claims and American's counterclaim was the same — the ownership and protected interest in the six trademarks. Thus, Defendants ask the Court to rule that American's Counterclaim was a compulsory counterclaim.

Defendants further assert that Counts II-VI in the instant action are virtually identical to the claims American pled in the Counterclaim. Because the Counterclaim was dismissed through the

---

[28]Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21) at p. 10.

[29]*See* Kansas Trademark Act, K.S.A. 81-201 *et seq.*

[30]*See* Trademark Act of 1946 (known as the Lanham Act), 15 U.S.C. §§ 1051, *et seq.*

Journal Entry of Judgment in the State Court Action, Defendants argue that American is barred from reasserting those same claims in the instant action.  Defendants relies on case law from various jurisdictions, including Kansas, which holds that a party may not dismiss a compulsory counterclaim in one lawsuit and then re-file it in another action.

American counters that the compulsory counterclaim doctrine is inapplicable to this case because the claims it asserted in the Counterclaim and reasserted in Counts II-VI in the instant Complaint cannot be deemed compulsory counterclaims with respect to Toytrackerz' State Court Action.  American does not dispute that its Counterclaim and the instant action involve the same trademarks at issue in the State Court Action.  It does, however, argue that Toytrackerz' Petition for Declaratory Judgment asked only for relief under *Kansas law*.  The Petition asked the state court to (1) construe the Kansas trademark statute and Kansas common law, and (2) regulate conduct that occurred within the state of Kansas.  American argues that, in contrast, American's Counterclaim and Counts II-VI of the instant Complaint allege infringement and other conduct and occurrences that took place *outside of Kansas in interstate commerce*, and that its claims rely wholly on *federal law*.  Thus, it argues that its Counterclaim and Counts II-VI of the instant action cannot be deemed compulsory counterclaims with respect to the State Court Action.

### B.      Applicable Law Regarding Compulsory Counterclaims

#### 1.      *This Court will apply Kansas law*

The first issue the Court must resolve is whether to apply Kansas law or the Federal Rules of Civil Procedure.  This Court has, on prior occasions, held that Kansas' compulsory counterclaim statute, K.S.A. 60-213(a), should be applied to determine whether a claim filed in federal court was

a compulsory counterclaim with respect to an earlier action brought in Kansas state court.[31]  This

Court has also applied Kansas case law to determine the preclusive effect of the failure to raise such

a compulsory counterclaim in the earlier state court action.[32]

In light of the above, and given that American's Counterclaim was brought in the District

Court of Bourbon County, Kansas, the Court will apply the law of Kansas to decide whether it was

a compulsory counterclaim and to determine the preclusive effect, if any, of it being dismissed

without prejudice in the State Court Action.[33]

2. *Definition of compulsory counterclaim under Kansas law*

Compulsory counterclaims are defined by K.S.A. 60-213(a) as follows:

A pleading shall state as a counterclaim any claim which at the time of serving the
pleading the pleader has against any opposing party, if it arises out of the transaction
or occurrence that is the subject matter of the opposing party's claim and does not
require for its adjudication the presence of third parties of whom the court cannot
acquire jurisdiction . . . .[34]

3. *Preclusive effect of not asserting the claim as a compulsory counterclaim or*
   *dismissing the counterclaim*

Although the statute itself does not explicitly provide that failure to plead a compulsory

counterclaim precludes the pleader from asserting it in a subsequent action, Kansas courts have

---

[31]*See, e.g., Lee v. Farmers Group, Inc.*, 923 F. Supp. 1391, 1399 (D. Kan. 1996).

[32]*See id.*

[33]Even if the Court were to apply federal compulsory counterclaim law to determine these
issues, the Court's holding would not differ.  As discussed in detail in Part IV.C.1, *infra.*, the Kansas
compulsory counterclaim statute is virtually identical to Fed. R. Civ. P. 13(a), which governs
compulsory counterclaims brought in federal court.

[34]K.S.A. 60-213(a).  While K.S.A. 60-213(a) carves out two exceptions to this general rule,
neither exception is applicable here.

consistently applied the statute in that fashion.[35]  Thus, "[i]t is well established in Kansas that he
failure to assert a compulsory counterclaim prevents a party from bringing a later independent action
on that claim."[36]

This general rule applies to the failure to assert the claim as a counterclaim in the first action.
It does not directly address the situation where a party asserts the claim as a counterclaim and then
voluntarily dismisses it while the rest of the action goes to judgment, only to reassert it in another
action.  These are the rather unique facts of this case.  Fortunately, a similar factual scenario was
addressed by the Kansas Court of Appeals in *Bugner v. Farm Bureau Mutual Insurance Co.*[37]  In
that case, the plaintiff, Daryl Bugner, and an uninsured motorist, Erin Lathen, were involved in a
car collision.  Lathen sued Bugner for personal injuries she suffered in the collision.  Bugner filed
a counterclaim, asserting that Lathen was at fault and seeking to recover for his personal injuries.
Bugner then filed a separate lawsuit against his insurance company, Farm Bureau, to recover under
his uninsured motorist coverage.  Farm Bureau moved to consolidate the actions, but the other
parties objected, and the judge refused to consolidate them.  Bugner offered to withdraw his
counterclaim against Lathen if the parties would agree that any finding of fault in the *Lathen* case
would not be binding in Bugner's action against Farm Bureau.  Over Farm Bureau's objection, the
court allowed the parties to include a provision in the *Lathen* pretrial order that the findings in

---

[35]*See, e.g., Loving v. Fed. Land Bank of Wichita*, 244 Kan. 96, 99, 766 P.2d 802 (1988);
*Mohr v. State Bank of Stanley,* 241 Kan. 42, 51, 734 P.2d 1072 (1987); *U.S. Fid. & Guar. Co. v.
Maish,* 21 Kan. App. 2d 885, 890, 908 P.2d 1329 (1995).

[36]*Loving*, 244 Kan. at 99.

[37]28 Kan. App. 2d 537, 18 P.3d 283 (2001).

*Lathen* were binding only as to the *Lathen* case and would not bind the parties in any other action. Bugner then dismissed his counterclaim without prejudice.[38]

The jury in *Lathen* returned a verdict finding Lathen 10% at fault, another party 25% at fault, and Bugner 65% at fault. Farm Bureau moved for judgment on the pleadings in the action Bugner had brought against it, arguing that Bugner's fault had been determined by the *Lathen* verdict. The judge denied the motion, noting that the cases had not been consolidated and the parties had agreed in the *Lathen* case that the findings in that case would not be binding in any other case. The jury in the *Bugner* case found that Lathen was 100% at fault. State Farm appealed to the Kansas Court of Appeals, arguing that all of the issues should have been resolved in one lawsuit, i.e., the *Lathen* suit.[39]

The Kansas Court of Appeals agreed. Relying on the compulsory counterclaim rule, the court held as follows:

> Although Daryl [Bugner] did not initiate the suit against the tortfeasor, Erin [Lathen] he was obligated under K.S.A. 60-213(a) to file a counterclaim against Erin once he was sued by Erin. Because Daryl's claim against Erin arose out of the same accident that resulted in Erin's claim against Daryl, this made Daryl's counterclaim compulsory. Although Daryl initially filed a counterclaim against Erin, he later dismissed it. *Nevertheless, Daryl was required to maintain his counterclaim against Erin or be barred from later bringing an independent action on this claim.*[40]

The Kansas Court of Appeals concluded that because all of the issues of liability concerning Bugner's uninsured motorist claim could have been litigated in the *Lathen* lawsuit, Bugner was

---

[38]*Id.* at 538.

[39]*Id.* at 539.

[40]*Id.* at 540 (citing *Stock v. Nordhus*, 216 Kan. 779, 781, 533 P.2d 1324 (1975)) (emphasis added).

"precluded from having a second opportunity to litigate percentages of causal negligence."[41]  The court therefore held that Bugner should not have been allowed to reassert his claim in his own lawsuit against Farm Bureau.[42]

The *Bugner* decision thus stands for the proposition that when a party files a compulsory counterclaim in an action in Kansas state court, that party must maintain that claim or be barred from later bringing another action on that claim.  The fact that the counterclaimaint dismisses the counterclaim without prejudice and even with the other parties' agreement that the first action will not be binding in any other actions involving the parties, does not alter the preclusive effect of the dismissal.  In sum, a party's dismissal of a compulsory counterclaim in an action that eventually goes to judgment, even when the dismissal is without prejudice, precludes that party from refiling that same claim in another action.

The rule from *Bugner* is consistent with the small number of other published cases that have addressed the dismissal of compulsory counterclaims that are later reasserted.[43]  The *Bugner* rule is also consistent with the Advisory Committee's Note to Federal Rule of Civil Procedure 13(a), which states:  "If the action proceeds to judgment without interposition of a counterclaim as required by

---

[41]*Id.*

[42]*Id.*

[43]*See, e.g., SSMC, Inc., N.V. v. Steffen,* 102 F.3d 704, 711 (4th Cir. 1996) (affirming district court's conclusion that dismissal of a compulsory counterclaim, even when it is without prejudice, would bar relitigation of that claim in another action) (citing Fed. R. Civ. P. 13 (a) and advisory committee's note); *Grynberg v. Phillips*, 148 P.3d 446, 449 (Colo. Ct. App. 2006) (applying counterclaim rule similar to Kansas' rule and affirming trial court's ruling that party's voluntary dismissal without prejudice of compulsory counterclaim precluded litigation of that claim in another case).

subdivision (a) of this rule, the counterclaim is barred."[44]  The clear inference to be drawn from the Advisory Committee's Note is that when a party asserts a compulsory counterclaim, the counterclaim should be taken to judgment; if it is withdrawn or dismissed while the rest of the action is taken to judgment, the counterclaim may not be reasserted in a later action.

### C.    Application of the Law to this Case

Having determined the applicable law, the Court must first decide whether American's Counterclaim was a compulsory counterclaim as defined by K.S.A. 60-213(a). If so, the Court must then determine whether the *Bugner* rule applies and whether it prevents American from asserting Counts II-VI in the instant action.

### 1.    *Was the Counterclaim a compulsory counterclaim in the State Court Action?*

As explained above, K.S.A. 60-213(a) provides that a counterclaim is compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Kansas courts have provided little guidance as to how this definition is to be applied. They have, however, consistently and expressly followed federal case regarding compulsory counterclaims, given the close similarities between K.S.A. 60-213(a) and Federal Rule of Civil Procedure 13(a).[45] Thus, case law from the Tenth Circuit further defining the term "arising out of the transaction or occurrence" is helpful.

The Tenth Circuit has noted that "courts have given the terms 'transaction' and 'occurrence'. . . flexible and realistic constructions in order to effect 'judicial economy', i.e., trial in one action

---

[44]Fed. R. Civ. P. 13(a) advisory committee's note 7 (1937).

[45]*See, e.g., Stock v. Nordhus*, 216 Kan. 779, 782, 533 P.2d 1324 (1975) ("Traditionally, we have followed federal interpretation of federal procedural rules after which our own have been patterned.  We see no reason to depart here from that view where our own policy [imbedded in K.S.A. 60-213(a)] is to avoid piecemeal [litigation].").

of all related controversies between the parties and, of course, the avoidance of multiplicity of suits."[46]   The Tenth Circuit has also observed that rather than attempting to define the terms "transaction" and "occurrence" precisely, "most courts . . . have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims may be determined."[47]   Most courts, including the Tenth Circuit, will consider one or more of the following factors:  (1) whether the issues of fact and law raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence will support or refute the claim and counterclaim; and (3) whether there is a "logical relationship between the claim and counterclaim.[48]

Applying these factors here, the Court concludes that the claims American asserted in its Counterclaim were compulsory counterclaims in the State Court Action.  The issues of law and fact raised by Toytrackerz' declaratory judgment action and American's Counterclaim were primarily the same.   Both Toytrackerz, through its action for declaratory judgment, and American, through its Counterclaim, asserted that they own the same disputed trademarks and have a protected right to use them.  More specifically, both the declaratory judgment action and the Counterclaim raised issues as to the ownership, scope, validity and enforceablity of the same seven trademarks, and would require a court to determine which party had a protected and actionable interest in each of those trademarks.[49]

---

[46]*Fox v, Maulding*, 112 F.3d 453, 457 (10th Cir. 1997) (quoting *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974)).

[47]*Fox,* 112 F.3d at 457 (quoting *Pipeliners Local*, 503 F.2d at 1198).

[48]*Id.* (quoting *Pipeliners Local*, 503 F.2d at 1198).

[49]To seek redress under either federal or Kansas law for trademark infringement and the other trademark-related claims asserted by the parties, the claimant must be able to prove ownership of, or a valid, protectable interest in, the trademark.  *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211,

(continued...)

The fact that Toytrackerz brought its declaratory judgment action pursuant to the Kansas Trademark Act[50] and Kansas common law, while American brought its Counterclaim pursuant to the Lanham Act,[51] is not dispositive.   The issue is not whether both parties sue on the same causes of action or under the same legal theories; rather, the issue is whether both actions arose out of the same transactions or occurrences.   Courts have consistently looked beyond the particular legal theories pled and held claims to be compulsory counterclaims to earlier actions, even though the later claims involved a different body of law.[52]   And here, the bodies of law are not even dissimilar.

---

[49](...continued)
1219 (10th Cir. 2004). In *Donchez*, the Tenth Circuit observed that in order to succeed in an action for common law trademark infringement, "a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion."   The Tenth Circuit  noted that the standard for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), is similar to the standard for common law trademark infringement. *Id.   See also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) ("claim of trademark infringement . . . requires a trademark holder to demonstrate ownership of a valid mark (i.e., a protectable interest)"; *A & H Sportswear v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 210 (3d Cir. 2000) (to recover on federal trademark infringement and related trademark claims, plaintiff must show that it possesses a valid, protectable trademark).   Similarly, to prevail on an unfair competition claim under the Lanham Act, a plaintiff must establish a protectable interest in the trademark. *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889, 895 (D. Utah 2007) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)).

[50]K.S.A. 81-201 *et seq.*

[51]15 U.S.C. § 1051 *et seq.*

[52]*See, e.g., In re Iannochino,* 242 F.3d 36, 38 (1st Cir. 2001) (holding that suit for professional malpractice was compulsory counterclaim to earlier bankruptcy court judgment awarding fees to debtor's attorney); *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1251-53 (9th Cir. 1987) (holding former employee's claims for defamation, abuse of process, breach of employment contract and intentional interference with business relationship to be compulsory counterclaims to employer's prior state court action against employee for appropriating confidential consumer information); *Eon Labs., Inc. v. Smithkline Beecham Corp*., 298 F. Supp. 2d 175, 182 (D. Mass. 2003) (holding state law antitrust, tortious interference, and unjust enrichment claims to be compulsory counterclaims to earlier federal patent infringement suit).   *See also Tapalian v. Town of Skeeonk*, 188 F. Supp. 2d 136, 139 (D. Mass. 2002) (recognizing that compulsory counterclaim doctrine applies "even though the claimant is prepared in a second action to present different . . .
(continued...)

The Kansas Trademark Act is the state counterpart of the Lanham Act, and by its express terms is intended "to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the trademark act of 1946, as amended."[53]  The Kansas Trademark Act further states: "To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this act."[54]  Thus, the fact that the State Court Action was based on state law and the Counterclaim on federal law does not render the compulsory counterclaim doctrine inapplicable here.

Courts will also look beyond the particular relief sought.  That the two opposing claims seek different legal remedies is not determinative of whether a claim is compulsory.[55]  Thus, the fact that Toytrackerz' State Court Action sought declaratory relief, and American's Counterclaim sought damages and injunctive relief, is not dispositive.  Indeed, courts have consistently applied the compulsory counterclaim doctrine to a claim seeking declaratory relief for trademark infringement and an opposing claim for damages for infringement of the same trademarks.[56]

---

[52](...continued)
legal theories to support his claim").

[53]K.S.A. 81-220(b).

[54]*Id.*

[55]*See, e.g., In re Iannochino,* 242 F.3d at 38 (finding malpractice claim to be compulsory even  though it sought damages and the earlier bankruptcy judgment awarded attorney's fees); *see also Tapalian,* 188 F. Supp. 2d at 139 (recognizing that compulsory counterclaim rule applies even when claims seek different legal remedies).

[56] *See, e.g., J. Lyons & Co. v. Rep. of Tea, Inc*., 892 F.Supp. 486, 490 (S.D. N.Y.1995) (action seeking declaratory relief that activities do not infringe trademarks are compulsory counterclaims to pending action asserting infringement of same alleged trademarks); *Alltrade, Inc. v. Uniweld Prods*., 946 F.2d 622, 625 n. 5 (9th Cir. 1991) (count seeking declaratory judgment of no trademark infringement is compulsory counterclaim to action for trademark infringement); *United Fruit Co. v. Standard Fruit & Steamship Co.*, 282 F. Supp. 338, 339-40 (D. Mass 1968) (continued...)

The Court also finds that the second and third factors render American's Counterclaim compulsory.  Much of the same evidence will be used to support or refute the critical element of which party owns the trademarks at issue.  In addition, the Court finds there is a strong, logical relationship between the claims in the State Court Action and American's Counterclaim.  A logical relationship will be found "if both the claim and the counterclaim have a common origin and common subject matter."[57]  Here, the ownership, validity, and use of the same trademarks were central to both the claim for declaratory relief and the Counterclaim.

The Court is not persuaded by American's arguments that its claims were not compulsory because the State Court Action addressed infringing transactions and occurrences that took place within Kansas allegedly in violation of Kansas law, while American's claims addressed infringing transactions and occurrences outside of Kansas in interstate commerce allegedly in violation of federal law.  In support of this argument, American relies on three paragraphs of the Complaint:  (1) Paragraph 14, wherein American alleges that it and its authorized licensees have sold toys and games utilizing the "MARX" trademark "in interstate commerce within the United States";[58]  (2) Paragraph 47, wherein American alleges that since 1921, it and its predecessor have sold product using the "MARX" trademark "in interstate commerce";[59]  and (3) in Paragraph 61, wherein American alleges that for more than 85 years American and its licensees and predecessors have sold toys using the "MARX" trademark and since 1965 have sold toys using the "Action Figure"

---

[56](...continued)
(complaint seeking declaratory judgment that defendant did not infringe plaintiff's trademark was compulsory counterclaim to unfair competition action).

[57]*Glasgow v. Eagle Pacific Ins. Co.*, 45 F.3d 1401,1402 (10th Cir. 1995) (citation omitted).

[58]Compl. (doc. 1), ¶ 14.

[59]*Id.*, ¶ 47.

trademarks "in the United States and worldwide."[60]  These allegations are substantially similar or identical to the allegations made in the Counterclaim.[61]

The Court is not persuaded by American's argument for several reasons.  First, nothing in the Kansas Trademark Act indicates that it cannot be applied to infringement occurring outside of Kansas.[62]  Moreover, nothing in Toytrackerz' Petition for Declaratory Judgment limits its application to infringements occurring only in Kansas.  Conversely, nothing in American's Counterclaim or Complaint in the instant action indicates that American is only seeking relief for infringement or other related violations of the Lanham Act outside of Kansas.

In sum, the Court finds that the claims asserted in American's Counterclaim, and which have been reasserted in Counts II-VI of the Complaint in this action, arose out of the same transactions and occurrences that were pled in Toytrackerz' Petition for Declaratory Judgment in the State Court Action.  The Court therefore deems them to be compulsory counterclaims with respect to the State Court Action.

> 2.    *Does the Bugner rule apply so as to bar American from asserting Counts II-VI in this action?*

Having determined the compulsory nature of American's claims, the Court must now proceed to determine whether American should be precluded from asserting them in Counts II-VI of the Complaint in this action.

---

[60]*Id.*, ¶ 61.

[61]In Paragraph 19 of the Counterclaim, American alleges that it and its licences have sold toys and games utilizing the "MARX" trademark "worldwide."  Paragraph 66 of the Counterclaim is identical to the allegation contained in Paragraph 61 of the Complaint.

[62]K.S.A. 81-213 provides for civil liability against any person who infringes upon any mark registered with the Kansas Secretary of State under the Kansas Trademark Act.  The statute contains no limitation on where that infringement must occur.

The Court finds the Kansas Court of Appeals' decision in *Bugner,*[63] *supra*, is controlling here.  Like the counterclaimant in *Bugner*, American voluntarily withdrew its Counterclaim in the State Court Action and dismissed it without prejudice.  The fact that American declared in its Voluntary Withdrawal of Answer, Counterclaim and Third-Party Claim[64] that it intended to pursue those claims in this action, does not render *Bugner* inapplicable.  Indeed, the counterclaimaint in *Bugner* made his intentions known that he was reasserting the claims in his counterclaim in another action, and the parties even stipulated in the pretrial order in the initial action that the findings of liability in the initial action would not be binding on any later actions.  Yet the Kansas Court of appeals still held that Bugner was precluded from reasserting his counterclaim in his own action.

Like the counterclaimant in *Bugner*, American was obligated under K.S.A. 60-213(a) to file its counterclaim in the State Court Action once Toytrackerz sued it, as American's claims arose out of the same infringing transactions as Toytrackerz' and therefore constituted a compulsory counterclaim.  Although American initially filed its Counterclaim against Toytrackerz, it made the voluntary decision to withdraw and dismiss it.  By doing so, American failed to "maintain" its Counterclaim as required by *Bugner*, and, thus, American is now barred from asserting those same claims in Counts II-VI of this action.

### D.      Conclusion

The purpose of K.S.A. 60-213(a) and the compulsory counterclaim doctrine is to require parties to present all of their existing claims simultaneously to the court or be forever barred. This prevents a multiplicity of suits arising from one set of circumstances. The effect of a voluntary dismissal of a compulsory counterclaim is similar to the failure to file such a claim in the first place.

---

[63]28 Kan. App. 2d at 540.

[64]See Ex. L, attached to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

To hold otherwise would allow a defendant, who does not wish to have a compulsory counterclaim litigated in the first action, to defeat the mandatory provisions of K.S.A. 60-213(a) and preserve the counterclaim simply by filing it in the first action and then voluntarily dismissing it without prejudice.

Judicial economy required that the claims contained in Counts II-VI of American's Complaint be brought, and maintained, in the State Court Action. The purpose behind the compulsory counterclaim doctrine, i.e. that of avoiding a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background will clearly be served by this holding.

Counts II-VI Complaint, which are virtually identical to the counts raised in the Counter-claim, are now barred. As these counts are now barred, American cannot state a claim for relief based upon them. The Court therefore grants Defendants' Rule 12(b)(6) Motion to Dismiss as to Counts II-VI of the Complaint, and said dismissal shall be with prejudice.

## V.      Should Counts II-IX Be Dismissed Because They Are Barred by Res Judicata?

### A.      Summary of the Parties' Arguments

Defendants contend that the doctrine of res judicata bars American from reasserting Counts II-IX in the instant action. Defendants maintain that the three elements of res judicata have been met: (1) the parties to the State Court Action and this action are identical; (2) a final judgment was entered in the State Court Action; and (3) the State Court Action and the instant action are based on the same causes of action. Defendants argue that it is immaterial that American seeks relief under federal law in the instant action and Toytrackerz sought relief under Kansas law in the State Court Action, because Kansas courts look beyond the particular statute under which the claim is brought in applying the doctrine. Regardless of the statutes or common law under which the claims are

brought, "the claim" at issue in both suits is the same:  ownership, in the form of a protected and actionable interest, of the various disputed trademarks.

As noted above, American does not dispute that this action and the State Court Action involve the same trademarks.  Nor does American dispute that the parties to the two actions are the same or that a final judgment was entered in the State Court Action.  Rather American, argues that there is no identity of claims because Americans claims arise under federal law and Toytrackerz' claims arose under Kansas law.  American further argues that no res judicata effect can be given to the judgment rendered in the State Court Action because the state court did not have jurisdiction to resolve any issues based on federal law.

### B.    Applicable Law Regarding Res Judicata

It is well settled that "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute."[65]  The full faith and credit statute provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."[66]  Thus, a federal court must accept and apply the res judicata rules of the state court that rendered the judgment to determine the effect it has on the federal proceeding.[67]

This Court must therefore look to Kansas law regarding res judicata to determine whether Counts II-IX of American's Complaint are barred.   Under Kansas law, the doctrine of res judicata

---

[65]*Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

[66]28 U.S.C. § 1738.

[67]*Marrese,* 470 U.S. at 380 ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.").

acts as "a bar to a second action upon the same claim, demand or cause of action."[68]  The doctrine is founded upon the principle that the party, or some other person or entity with whom the party is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction.[69]   Res judicata applies "not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided."[70]  It "prevents the splitting of a single cause of action or claim into two or more suits . . . and requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action."[71]

The Kansas Supreme Court has described the rationale behind the doctrine as follows: "This rule is one of public policy.  It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause."[72]  Accordingly, the doctrine must "be given a liberal application but not applied so rigidly as to defeat the ends of justice."[73]

---

[68]*Matter of Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985).

[69]*Id.* (citing *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 (1971)).

[70]*Id.* (citing *Hutchinson Nat'l Bank & Trust Co. v. English*, 209 Kan. 127, 130, 495 P.2d 1011 (1972)).

[71]*Id.* (citing *Parsons Mobile Prods., Inc. v. Remmert*, 216 Kan. 138, 140, 531 P.2d 435 (1975)).

[72]*Id.*

[73]*Id.* (citing *Wells, Admin'r v. Ross*, 204 Kan. 676, 678, 465 P.2d 966 (1970)).

Under Kansas law, res judicata prevents relitigation of previously litigated claims when the following four elements are satisfied: "(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."[74]

## C.    Application of the Law to this Case

As noted above, American does not dispute that there is an identity of the parties. It also does not dispute that the Journal Entry of Judgment entered on August 1, 2007 in the State Court Action was a prior and final judgment on the merits.[75] Thus, the Court finds that those two elements of the doctrine have been satisfied. The Court must proceed to determine whether the claims asserted in the State Court Action and Counts II-IX of the instant Complaint are the same for purposes of applying the res judicata doctrine and whether the claims now being asserted were, or could have been, raised in the State Court Action.

The Court finds that the claims are the same, despite the fact that the parties have asserted them under different statutes. The Kansas Supreme Court has held on several occasions that the identity of a  "claim" for purposes of res judicata does not turn on which particular statute or law is relied upon:

> Application of the doctrine of res judicata is unconcerned with the procedural avenue employed to acquire jurisdiction in a particular tribunal. The doctrine prevents a second assertion of the same claim or cause of action and, regardless of which statute a party uses to proceed to a tribunal, where the same facts, same parties and same

---

[74]*Winston v. Kansas Dep't of SRS*, 274 Kan. 396, 413, 49 P.3d 1274 (2002); *accord Fowler v. State*, 37 Kan. App. 2d 477, 480, 154 P.3d 550 (2007).

[75]The Journal Entry of Judgment was signed by the parties and the Bourbon County District Court Judge. Under Kansas law, a "judgment entered by consent of the parties or their attorneys is as conclusive on matters in issue as one rendered after contest and trial." *Neville v. Hennigh*, 214 Kan. 681, 685, 522 P.2d 443 (1974).

issues have previously been litigated before a court of competent jurisdiction which renders a judgment within its competency, the cause of action is barred.[76]

The term "claim" or "cause of action" for purposes of applying the doctrine of res judicata means "the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief."[77]  Thus, a court must look to what facts are involved in the claims and whether the evidence necessary to sustain the claim is the same in both the former and present action.[78]

The Court finds that regardless of the particular statute or law the parties have relied upon, the same "claims" American is asserting in Counts II-IX have been litigated in the State Court Action.  The instant action and the finalized State Court Action revolve around a single core of facts, evidence, and issues — ownership of the trademarks and the right to assert a protected interest in those trademarks.  Toytrackerz proceeded under the Kansas Trademark Act and Kansas common law, while American proceeds under the federal Lanham Act.  The elements of proof under both legal theories are identical — in order to claim a protected interest, the party must establish ownership of, or a protectable interest in, the trademark.[79]  The witnesses, testimony and other types of evidence and proof would be the same.  A judgment was entered that American had no protected

---

[76]*Ellis v. State Farm Mut. Auto. Ins. Co.*, 249 Kan. 599, 604, 822 P.2d 35 (1991); *Carson v. Davidson*, 248 Kan. 543, 549, 808 P.2d 1377 (1991); *Reed*, 236 Kan. at 519 (1985); *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983).

[77]*Reed*, 236 Kan. at 520.

[78]*Id.*

[79]As noted above, in order to recover under either federal or Kansas law for trademark infringement and the other trademark-related claims asserted by the parties, the claimant must be able to prove ownership of, or a protectable interest in, the trademark.  *See* note 49, *supra*.

interest in the trademarks under the Kansas Trademark Act.  Thus, res judicata applies to bar relitigation of American's claims, even despite the fact that the claims arise under federal law.

The Court is not persuaded by American's argument that res judicata does not apply because the state court lacked subject matter jurisdiction to decide any issues relating to American's ownership of the trademarks under federal law.  The case relied upon by American, *Siegel v. Time Warner, Inc.*,[80] is not applicable here.  As American points out, that case held that a federal court should not give preclusive effect to a state court judgment where the state court's findings exceed its jurisdiction.[81]  That case, however, dealt with copyright infringement, over which federal courts have *exclusive* jurisdiction.[82]  Counts II-IX of American's action involve trademark infringement and trademark-related claims, over which state courts may exercise jurisdiction.[83]  Obviously, the state court had jurisdiction over federal trademark claims, as American filed its Counterclaim in that action asserting various causes of action under the federal Lanham Act.   Thus, the Court finds no merit to American's argument that res judicata should not apply because the state court lacked

---

[80]496 F. Supp. 2d 1111 (C. D. Cal. 2007).

[81]*Id*. at 1130.

[82]28 U.S.C. § 1338(a) provides that the federal district courts' original jurisdiction over copyright actions "shall be exclusive of the courts of the states."

[83]*See, e.g., Aquatherm Indus., Inc. v. Fla. Power & Light Co.,* 84 F.3d 1388, 1394 (11th Cir. 1996) (state and federal courts have concurrent jurisdiction over Lanham Act claims); *Sbarro, Inc. v. Karykous,* No. CV 05-2311 CPS, 2005 WL 1541048, at *2 (E.D. N.Y. June 29, 2005) (claims under Lanham Act may be brought in state court); *Sebastiana Mgmt., Inc. v. Israeli*, No. CV-92-4756 (RJD), 1992 WL 390259, at *1 (E.D. N.Y. Nov. 3, 1992) ("this Court has original, non-exclusive jurisdiction over Lanham Act claims."); *Ryan v. Volpone Stamp Co., Inc.,* 107 F. Supp. 2d 369, 375 n. 3 (S.D. N.Y. 2000) ("Although federal courts are granted exclusive jurisdiction with respect to patent, plant variety protection and copyright cases, the state courts enjoy concurrent jurisdiction with the federal courts over trademark, i.e. Lanham Act claims.").

jurisdiction to rule on any claims relating to American's ownership of the trademarks under federal law.

Finally, the Court finds that American's claims were, or could have been, asserted in the State Court Action.  American asserted in its Counterclaim in the State Court Action many of the identical claims that it has asserted in this action.  Those claims that were not expressly asserted in the Counterclaim, could have been asserted in the State Court Action.  Thus, this final element of the doctrine has been established.

### D.     Conclusion

The Court holds that Counts II-IX of the present action allege the same claims that were determined adversely to American in the State Court Action.  In addition, they were claims that American brought, and voluntarily dismissed, in the State Court Action, or could have been brought in the State Court Action.  Regardless of the law relied upon (Kansas versus federal trademark law), the fact remains that the same facts, same parties, and same issues have previously been litigated before a court of competent jurisdiction.  Thus, Counts II-IX of the present action are barred by the doctrine of res judicata.

As those counts are now barred, American can prove no set of facts in support of them that would entitle American to relief.  Dismissal of Counts II-IX under Rule 12(b)(6) is therefore appropriate, and  Defendants' Motion to Dismiss is granted as to these counts.  Counts II-IX are dismissed with prejudice.

### VI.     Should Counts II-IX Be Dismissed Because They Are Barred by Collateral Estoppel?

Although the Court has already determined that Counts II-IX should be dismissed because they are barred by res judicata, the Court will still proceed to determine whether they are also subject to dismissal based on the doctrine of collateral estoppel.

### A.      Summary of the Parties' Arguments

Defendants contend that the doctrine of collateral estoppel bars American from reasserting Counts II-IX in the instant action.  Defendants assert that the three elements of collateral estoppel have been met: (1) the parties to the state court action and this action are identical; (2) a final judgment was entered in the State Court Action; and (3) the issue of the ownership of the trademarks at issue was conclusively determined in the State Court Action.

American asserts the same arguments that it asserts in response to Defendants' position that Counts II-IX are barred by the doctrine of res judicata.

### B.      Applicable Law Regarding Collateral Estoppel

As noted above, the full faith and credit statute requires that a federal court refer to the preclusion law of the state in which the judgment was rendered.  Thus, this Court must look to Kansas law regarding collateral estoppel (or issue preclusion, as it is sometimes called) to determine whether the issues litigated in the State Court Action may be relitigated in this federal action.[84]

Under Kansas law, the doctrine of collateral estoppel or issue preclusion prevents the plaintiff from litigating any fact or legal issue actually resolved against it in the previous lawsuit and necessary to the final judgment in that lawsuit.[85]  Collateral estoppel may be invoked where the following are shown: "(1) a prior judgment on the merits which has determined the rights and liabilities of the parties on the issue; (2) the parties are in privity; and (3) the litigated issue must be

---

[84]*Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (federal court looks to state rules of issue preclusion to determine if a matter litigated in the state court may be relitigated in a subsequent federal proceeding).

[85]*Stanfield v. Osborne Indus., Inc.*, 263 Kan. 388, 397, 949 P.2d 602 (1997).

29

necessary to support the prior judgment."[86]   As the Kansas Supreme Court has noted, "[t]he doctrine of collateral estoppel is different from the doctrine of res judicata.  Instead of preventing a second assertion of the same claim or cause of action, the doctrine of collateral estoppel prevents a second litigation of the same issues between the same parties or their privies even in connection with a different claim or cause of action."[87]

The rule precluding the relitigation of questions that were in issue and adjudicated in a former action is "applied to all matters essentially connected with the subject matter of the litigation."[88]   The rule extends to questions necessarily involved in an issue and necessarily adjudicated, or necessarily implied in the final judgment.[89]

## C.    Application of the Law to this Case

As noted above, American does not dispute that the parties are the same or that a final judgment was entered on the merits in the State Court Action.  Thus, the Court finds that those elements of the collateral estoppel doctrine have been satisfied.  Accordingly, the only questions the Court must decide are whether the controlling issues contained in Counts II-IX of the judgment were determined by the state court and were necessary to that judgment.

The judgment in the State Court Action determined that American "has no protected or actionable interest" in the trademarks at issue in this case "under K.S.A. 81-202 *et seq.* or Kansas

---

[86]*Fowler v. State*, 37 Kan. App. 2d 477, 480, 154 P.3d 550 (2007); *State v. Chatagnier*, 27 Kan. App. 2d 307, 310-11, 3 P.3d 586 (2000).

[87]"*In re City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004) (quoting *Williams v. Evans*, 220 Kan. 394, Syl. ¶ 1, 552 P.2d 876 (1976)).

[88]*Neville v. Hennigh*, 214 Kan. 681, 688, 522 P.2d 443 (1974).

[89]*Id.*

30

common law."[90]  Clearly, the judgment would have a preclusive effect as to American's ability to proceed on Counts II-IX of its Complaint if they were brought under Kansas law.  Indeed, American concedes this in its response, wherein it states:  "To the extent American's Complaint seeks remedy under *Kansas* law (which it does not) this Court *should* give preclusive effect to the determination and prevent American from seeking relief against Toytrackerz under Kansas law."[91]  American contends, however, that because its Complaint seeks relief under federal law, the legal issues before this Court are wholly different and prevent collateral estoppel from being applied.  The Court disagrees.

As previously discussed, both the federal and state statutory schemes require ownership or a protectable interest in the trademark.[92]  That is a threshold issue.  The Journal Entry of Judgment in the State Court Action specifically determined that American "has no protected or actionable interest" in the disputed trademarks.[93]  Thus, that threshold  issue has been conclusively determined as to each of the trademarks.  Those issues were necessary to the judgment and have been decided and ruled upon by a court of competent jurisdiction.[94]  Accordingly, the Court holds that the doctrine of collateral estoppel bars Plaintiff from relitigating Counts II-IX in the instant action.

---

[90]8/1/2007 Journal Entry of J., Case No. 06 CV 04, attached as Ex. A to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

[91]American's Resp. to Defs.' Mot. to Dismiss (doc. 24) at p. 9.

[92]*See* note 49, *supra.*

[93]8/1/2007 Journal Entry of J., Case No. 06 CV 04, attached as Ex. A to Defs.' Br. in Supp. of Mot. to Dismiss (doc. 21).

[94]The Court has already rejected American's argument that the state court lacked jurisdiction to rule on any issues under federal law.  *See* Part V.C, *supra*.

### D.      Conclusion

A protected or actionable interest is necessary for American to prevail on its trademark claims contained in Counts II-IX of this case.  American, however, conceded in the State Court Action that it has no protected or actionable interest in the trademarks, and the state court entered judgment specifically finding that American had no such interests in the trademarks.  The issue has therefore been conclusively resolved by a court of competent jurisdiction.  The doctrine of collateral estoppel therefore applies, and prevents a second litigation of these issues.

As American is barred from reasserting the claims it pleads in Counts II-IX of the Complaint, it can state no facts in those counts that would entitle it to relief.  Dismissal of Counts II-IX under Rule 12(b)(6) is therefore appropriate, and  Defendants' Motion to Dismiss is granted as to Count II-IX of the Complaint.  Said dismissal shall be with prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts II-IX for Failure to State a Claim (doc. 20) is granted.  Counts II-IX of American Plastic Equipment, Inc.'s Complaint are hereby dismissed with prejudice.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 31st day of March 2008.


                                        s/David J. Waxse
                                        David J. Waxse
                                        U.S. Magistrate Judge


cc:      All counsel and pro se parties