DJW/1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**AMERICAN PLASTIC EQUIPMENT, INC.,**

           **Plaintiff,**　　　　　　　　Civil Action

v.　　　　　　　　　　　　　　　　　No. 07-2253-DJW

**TOYTRACKERZ, LLC, et al.,**

           **Defendants.**

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Toytrackerz, LLC's Motion for Summary Judgment (doc. 50) on Plaintiff's copyright infringement claims, which are the sole remaining claims in this action against Toytrackerz, LLC.[1]

**I.**　　**Background Information and Nature of the Matter Before the Court**

Plaintiff American Plastic Equipment, Inc. brings this action against Toytrackerz, LLC ("Toytrackerz") and one of its managing members, Noah Coop (collectively "Defendants") for copyright infringement. Plaintiff alleges that it is the valid owner of the following eleven registered copyrights in toys and action figures (collectively referred to as "the Marx Action Figures and Other Marx Toys"):

    Reg. No. GP 45614 for TOY FIGURE (Woodsman)
    Reg. No. GP 47003 for CHIEF CHEROKEE
    Reg. No. GP 47004 for JOHNNY WEST
    Reg. No. GP 47005 for HORSE
    Reg. No. GP 48885 for Articulated ALL AMERICAN FIGURE
    Reg. No. GP 53998 for COMANCHE Horse

---

[1] On March 31, 2008, the Court dismissed with prejudice Counts II-IX of the Complaint for failure to state a claim. *See* Mem. and Order (doc. 44).

      Reg. No. GP 53999 for CAPT. MADDUX toy figure[2]
      Reg. No. GP 54000 for ZEB ZACHARY toy figure
      Reg .No. GP 54001 for GERONIMO Indian Figure
      Reg. No. GP 54292 for FIGHTING EAGLE - Indian Figure
      Reg. No. GP 54591 for JAY WEST – Young Cowboy Figure[3]

Plaintiff alleges that it is the successor in interest to Louis Marx & Co., which is the company that created the Marx Action Figures and Other Marx Toys.[4] Plaintiff further alleges that Plaintiff "owns all the intellectual property rights of Louis Marx & Co. as purchased from the Chemical Bank of New York in June of 1988."[5]

According to Plaintiff's Amended Complaint, Toytrackerz has manufactured and sold unauthorized copies of the Marx Action Figures and Other Marx Toys and violated Plaintiff's "exclusive rights to produce derivative works of the Marx Action Figures and Other Marx Toys."[6] The Amended Complaint also alleges that Noah Coop "is directly, vicariously and contributorily liable for the [infringement] because he knew of the infringement, controlled, participated in and contributed to the unauthorized copying, display and distribution of the unauthorized Marx Action Figures and the Other Marx Toys."[7] Furthermore, despite receiving notice that Plaintiff's works

---

[2]Plaintiff 's Amended Complaint refers to this figure as "Capt. Maddux." *See* Am. Compl (doc. 49), ¶¶ 36(g) & 37(g). However, the Copyright Registration Form attached as exhibits to both the Amended Complaint and Toytrackerz' summary judgment brief refers to it as "Capt. Maddox." *See* Ex. 1, attached to Am. Compl. (doc. 49); Ex. K, attached to Toytrackerz' Mem. in Support of Mot. for Summ. J. (doc. 51).

[3]Pl.s' Am. Compl. (doc. 49) ¶36.

[4]*Id.* ¶ 35.

[5]*Id.*

[6]*Id.* ¶ 42.

[7]*Id.* ¶ 43.

were subject to copyright, Defendants allegedly "conspired to create, manufacture, and distribute unauthorized copies of the works" owned by Plaintiff.[8]

Plaintiff asserts that Defendants' alleged acts are in violation of 17 U.S.C. § 501, and it seeks compensatory damages and statutory damages for each violation or disgorgement of Defendants' profits. It also seeks an order prohibiting Defendants "from producing, displaying, publishing or preparing derivative works from . . . the Marx Action Figures and Other Marx Toys."[9]

Toytrackerz contends that it is entitled to summary judgment on Plaintiff's copyright infringement claims because Plaintiff cannot establish an essential element of its infringement claims, i.e., ownership of the copyrights at issue. More specifically, Toytrackerz contends Plaintiff cannot prove ownership of either the initial or renewal terms of the copyrights.

## II.     Standard for Ruling on a Motion for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[10] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[11] An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."[12] A fact is "material" when "it is essential to the

---

[8]*Id.* ¶45.

[9]*Id.* at 11.

[10]Fed. R. Civ. P. 56(c).

[11]*Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).

[12]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

proper disposition of the claim."[13] In other words, a factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[14] A "genuine" factual dispute requires more than a mere scintilla of evidence.[15]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[16] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply "point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[17] The burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[18]

Where the nonmoving party bears the burden of proof on an element essential to its case, the failure to designate specific facts sufficient to show the existence of the essential element entitles the moving party to summary judgment.[19] In responding to a motion for summary judgment, "a

---

[13]*Id.*

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[15]*Id.* at 252.

[16]*Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[17]*Id.* (citing *Celotex*, 477 U.S. at 325).

[18]*Id.*

[19]*Celotex,* 477 U.S. at 322-23.

party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[20]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[21]

### III.    Statement of Uncontroverted Facts

Consistent with the foregoing standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or, if disputed, stated in the light most favorable to Plaintiff, the responding party.

Louis Marx & Co. was founded in 1919 as a toy sales company. From approximately 1964 to 1970, Louis Marx & Co. produced 1:6 scale action figures under various trademark names, including "Johnny West," "Best of the West," "the Western Series," and "Fort Apache Fighters." The eleven copyrights at issue in this case for the Marx Action Figures and Other Marx Toys were registered with the Register of Copyrights, and the Register issued Copyright Certificates to Louis Marx & Co., indicating that the author of each of the copyrights is Louis Marx & Co.

On or about June 30, 1972, Louis Marx & Co. was purchased by The Quaker Oats Company ("Quaker Oats"). Louis Marx & Co., as a wholly owned subsidiary company or division of Quaker Oats, continued to manufacture the 1:6 scale action figures in the style of the original Marx Action Figures and Other Marx Toys.

---

[20]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[21]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

On or about April 1976, Quaker Oats sold the United States and Hong Kong holdings of Louis Marx & Co. to the British firm Dunbee-Combex. Quaker Oats retained the Mexican holdings, however. Subsequently, Louis Marx & Co. was sold to a British firm, Dunbee-Combex. At some point thereafter, Dunbee-Combex became known, or reorganized, as Dunbee-Combex-Marx.[22] Dunbee-Combex-Marx, through its principal Richard Beecham, assumed the business name "Louis Marx & Co." and took over the United States and Hong Kong operations of Louis Marx & Co.

In 1980, Dunbee-Combex-Marx, dba Louis Marx & Co., filed a petition for bankruptcy in the Southern District of New York. Thereafter, Chemical Bank of New York ("Chemical Bank") acquired the assets of Louis Marx & Co. There is no document in the record showing a transfer of those assets, or any of the copyrights at issue, to Chemical Bank.

In 1988, Chemical Bank entered into two "Bills of Sale," whereby Chemical Bank sold to Plaintiff all of Chemical Bank's "interest, if any" in the copyrights "formerly owned by Louis Marx & Co."[23] According to the Bills of Sale, Chemical Bank acquired its interests, if any, in the copyrights "formerly owned by Louis Marx & Co." by repossessing them from Louis Marx & Co. or its affiliated companies "in the exercise of its rights under a security agreement." More specifically, the Bills of Sale state:

> In consideration of the sum of ten dollars ($10.00) and other good and valuable consideration, receipt of which is hereby acknowledged, CHEMICAL BANK ("Seller"), does hereby sell and transfer to AMERICAN PLASTIC EQUIPMENT,

---

[22]Neither party explains how Dunbee-Combex came to be known as Dunbee-Combex-Marx; however, both parties agree that the company's name was Dunbee-Combex-Marx. *See* Uncontroverted Fact No. 6; ¶ 18, Horowitz Decl., attached as Ex. 1 to Plf.'s Resp. to Mot. for Summ. J. (doc. 55).

[23]*See* April 12, 1988 Bill of Sale and June 2, 1988 Bill of Sale, attached as Exs. A & C to Mem. in Supp. of Toytrackerz' Mot. for Summ. J. (doc. 51).

6

> INC. ("Buyer"), Seller's interest, if any, in all of the trademarks, patents, copyrights and related goodwill formerly owned by Louis Marx & Co. or its affiliated companies and which shall be referred to herein as the "Property".
>
> The Property has been repossessed by the Seller from Louis Marx & Co. or its affiliated companies in the exercise of its rights under a security agreement. The Seller is neither a dealer nor merchant in the Property.
>
> The Seller makes no warranty of title or that the Property is free of liens or claims in favor of others, and makes no warranty of merchantability in respect to the Property, which is sold in an "as is, where is" condition with all faults. By acceptance of delivery of the Property, the Buyer affirms that is has not relied on the Seller's skill or judgment to select or furnish the Property for any particular purpose, and that the Seller makes no warranty that the Property is fit for any particular purpose and that there are no representations or warranties, expressed, implied or statutory, that extend beyond the description of the Property set forth herein. Buyer acknowledges that Seller may have sold all or a part of the Property to a third party and may not have any interest in all or a part of the Property, that Seller is not obligated to provide Buyer with any records or documents evidencing or relating to the Property and that this sale is without any recourse to Seller.
>
> This is a final and exclusive expression of the agreement of the Seller and the Buyer and no course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any term expressed in the agreement.[24]

The Bills of Sale are both executed by John H. McGowan as Vice President of Chemical Bank, and their terms are identical. The only differences are the date and the fact that the Mr. McGowan's signature on the April 12, 1988 Bill of Sale is notarized.[25] For purposes of this motion, the Court need not decide which specific Bill of Sale is controlling, as Plaintiff does not dispute that it received its rights to the copyrights at issue through one or both of these transfers from Chemical Bank. Furthermore, Plaintiff does not dispute the authenticity of either Bill of Sale and states in its Response to the Motion for Summary Judgment that the documents attached to Toytrackerz' Motion

---

[24]*Id.*

[25]*See id.*

7

as Bills of Sale show that Plaintiff purchased the copyrights of Louis Marx & Co. from Chemical Bank.[26]

On August 1, 2000, Jay Horowitz, as President of Plaintiff American Plastic Equipment, Inc., executed a Bill of Sale transferring various properties of Plaintiff to Marx Toys, Inc., including, but not limited to:

> All molds ("The Molds") currently owned by American Plastics Equipment, Inc. of Marx Toy origin[;]
>
> * * * *
>
> All Product Rights including but not limited to the intellectual property rights such as any patents, trademarks and copyrights associated with or related to the product made from The Molds, if any, to the extent held . . . .[27]

Marx Toys, Inc. was administratively dissolved in 2003. Plaintiff asserts that in 2003, Jay Horowitz, acting as director of the dissolved Marx Toys, Inc., assigned all of Marx Toys, Inc.'s intellectual property rights of Louis Marx & Co. origin, including the copyrights at issue, to Plaintiff. There is no written document memorializing that assignment in the record.

Before turning to it analysis of these facts, the Court notes that Plaintiff was granted leave to file a supplemental brief.[28] In that supplemental brief, Plaintiff submits Toytrackerz' response to Plaintiff's Request for Admission No. 8, in which Toytrackerz denies that "[o]n April 12, 1988 American Plastic Equipment, Inc. acquired from Chemical Bank of New York any and all copyrights formerly owned by Louis Marx & Co., Inc."[29] Plaintiff argues that Toytrackerz' denial creates a disputed issue of material fact that defeats summary judgment. The Court is not persuaded, by

---

[26]Pl.'s Resp. to Mot. for Summ. J. (doc. 55) at 3.

[27]Bill of Sale, attached as Ex. J to Mem. in Supp. of Def.'s Mot. for Summ. J. (doc. 51).

[28]*See* Ex. 3, attached to Pl.'s Supp. Resp. to Def.'s Mot. for Summ. J. (doc. 79)

[29]*Id.* at 6.

Plaintiff's argument. In fact, the Court finds that Toytrackerz' denial is totally consistent with its position that no interests in the copyrights were transferred from Chemical Bank to Plaintiff in 1988 and that Plaintiff cannot establish an unbroken chain of title to the copyrights.

**IV.     Summary of the Parties' Arguments**

Plaintiff contends that it is the valid owner of the copyrights at issue because (1) Louis Marx & Co. was the creator of the Marx Action Figures and other Marx Toys, and (2) Plaintiff "owns all the intellectual property rights of Louis Marx & Co. as purchased from the Chemical Bank" in 1988.[30] Toytrackerz contends that it is entitled to summary judgment because Plaintiff has failed to establish a chain of title culminating in Plaintiff's ownership of the copyrights. Toytrackerz argues that Plaintiff cannot establish that it owns either the initial or renewal rights in the copyrights.

**V.      Applicable Law**

It is axiomatic that "[t]o establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[31] Copyright ownership "vests initially in the author or authors of the work."[32] Generally, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."[33] Authors are not the only parties who may sue for copyright infringement, however. Pursuant to 17 U.S.C. § 501(b), the legal or beneficial owner of rights under a copyright may pursue an action for infringement of that copyright committed

---

[30]Am. Compl. (doc. 49) ¶ 35.

[31]*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

[32]17 U.S.C. § 201(a).

[33]*Comty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

9

while he or she is the owner of it.[34]  Thus, even though a party was not the author of the work, the party may still sue for infringement if the infringement occurred while the party owned the rights under the copyright.

If a plaintiff who is not the author of the copyrighted work sues for infringement, he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright.[35]  A determination of copyright ownership is a conclusion of law based on the underlying facts.[36]

Under § 204(a) of the Copyright Act, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."[37]  While Section 204(a)'s signed writing requirement is sometimes called the

---

[34]Under 17 U.S.C. § 501(b), only "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."

[35]*Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985); *Tang v. Whang,* 799 F. Supp. 499, 503 (E. D. Pa. 1992); *Bell v. Combined Registry Co.*, 397 F.Supp. 1241, 1245 (N.D. Ill. 1975), *aff'd,* 536 F.2d 164 (7th Cir. 1976).  A certificate of registration creates a prima facie presumption of validity of the copyright. *See* 17 U.S.C. § 410(c). An assignee or owner of a previously registered statutory copyright, as Plaintiff claims to be, bears the burden of proving its chain of title because nothing in the registration certificate itself establishes its right to claim through the original copyright claimant.  *See Kramer v. Thomas,* No. CV 05-8381 AG (CTX), 2006 WL 4729242, at *6 (C.D. Cal. Sept. 28, 2006); 3 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[C] (2006).

[36]*Motta,* 768 F.2d at 484; *Peer Int'l. Corp. v. Latin Am. Music Corp.*, 161 F.Supp.2d 38, 45 (D. P.R. 2001); 3 Nimmer, *supra*, § 13.01[A].

[37]17 U.S.C. § 204(a).

10

"copyright statute of frauds," it is in fact different from a statute of frauds.[38]  Section 204 "is a prerequisite to a valid transfer of copyright ownership, and not merely an evidentiary rule."[39]  A transfer of copyright is simply not valid without the required written instrument.[40]  A mere claim that a written document exists is not enough to cloud the title; the written document transferring the rights and signed by the owner must be submitted into evidence.

The writing in question "doesn't have to be the Magna Charta; a one-line pro forma statement will do."[41]  Nor does the writing have to contain any particular language.[42]  It must, however, clearly show an agreement to transfer the rights in the copyright.[43]

The writing requirement serves several purposes.  First, it ensures that a copyright will not be inadvertently transferred.[44]  Second, it "forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price."[45]  Third, it provides a guide for resolving disputes; the parties can look to the writing to

---

[38]*Lyrick Studios, Inc. v. Big Idea Prods., Inc*., 420 F.3d 388, 391 (5th Cir. 2005); *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).

[39]*SCO Group, Inc. v. Novell, Inc*., No. 2:04CV139DAK, 2007 WL 2327587, at *33 (D. Utah Aug. 10, 2007).

[40]*Lyrick Studios*, 420 F.3d at 391; *Konisberg,* 16 F.3d at 357; SCO Group, 2007 WL 2327587, at *33.

[41]*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

[42]*Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("No magic words must be included in a document to satisfy § 204(a).").

[43]*Id*.

[44]*Effects Assocs.*, 908 F.2d at 557.

[45]*Id.*

11

determine whether a use is improper.[46]  In these ways, the writing requirement "enhances predictability and certainty of copyright ownership — 'Congress' paramount goal' when it revised the [Copyright] Act in 1976."[47]

## VI.   Analysis

Plaintiff claims that Defendants have violated its copyrights beginning in 2006 and continuing through the present.[48]  Plaintiff must therefore establish a chain of title culminating in ownership during that period of time up to the present.  If Plaintiff cannot establish a valid chain of title and ownership, then it has no valid copyright infringement claim, and summary judgment in favor of Toytrackerz is appropriate.

The complete chain of title to these copyrights is unclear from the summary judgment record. What is clear, however, is that there are several breaks in the chain, which prove fatal to Plaintiff's claims.  The first break is in the alleged transfer of rights from the dissolved Marx Toys, Inc. to Plaintiff in 2003.  There is no written document memorializing that assignment in the record.  The *only* evidence in the record is Mr. Horowitz's declaration that he, in his capacity as director of the administratively dissolved Marx Toys, Inc., assigned the rights to the copyrights to Plaintiff in 2003. That declaration is clearly insufficient to establish the transfer of the copyright to Plaintiff.  As noted above, under § 204(a) of the Copyright Act, a copyright is not valid unless there a written document signed by the owner transferring the rights.  Without such a document, Plaintiff cannot establish the requisite chain of title and ultimate ownership of these copyrights.

---

[46]*Id.*

[47]*Id.* (quoting *Reid*, 490 U.S. at 749).

[48]Am. Compl. ¶ 39 (doc. 49).

The Court also finds another break in the chain of title with respect to Chemical Bank. While the Bills of Sale indicated that Chemical Bank transferred to Plaintiff in 1988 whatever rights, if any, it had in the copyrights "formerly owned by Lewis Marx & Co.,"[49] there is no written document in the record establishing that Chemical Bank owned the copyrights at the time it transferred them. For the chain of title to be secure, Plaintiff would have to present a written document, signed by the then owner, transferring the copyrights to Chemical Bank. It is not enough that the Bills of Sale indicate that the copyrights were "repossessed by the Seller [Chemical Bank] from Louis Marx & Co. or its affiliated companies in the exercise of its rights under a security agreement."[50] Because Plaintiff has failed to submit a signed written document transferring the copyrights to Chemical Bank, Plaintiff cannot establish the requisite chain of title through Chemical Bank. Without that unbroken chain of title, Plaintiff cannot establish its ultimate ownership of the copyrights. Ownership is an essential element of Plaintiff's copyright infringement claims, and Plaintiff's failure to establish the chain of title is fatal to its ability to recover for copyright infringement. The Court will therefore enter summary judgment in favor of Toytrackerz.

Because Plaintiff fails to establish the requisite chain of title and the Court will enter summary judgment in favor of Toytrackerz on that basis, it is not necessary for the Court to consider Toytrackerz' additional arguments that Plaintiff fails to establish ownership of the renewal rights.

## VII. Conclusion

Even taking all inferences in favor of Plaintiff, Plaintiff cannot prevail on its copyright infringement claims because it cannot establish ownership of the copyrights at issue. Plaintiff has

---

[49] *See* Ex. A & C. and Uncontroverted Fact No. 7.

[50] *See* Ex. A & C. and Uncontroverted Fact No. 7.

13

the burden of proving ownership of the copyrights. Plaintiff has failed to meet its burden. The Court therefore grants summary judgment in favor of Toytrackerz on the copyright infringement claims, which are the only claims remaining against it in this lawsuit.

**IT IS THEREFORE ORDERED** that Defendant Toytrackerz, LLC's Motion for Summary Judgment (doc. 50) is granted.

**IT IS SO ORDERED.**

Dated in Kanas City, Kansas this 31st day of March 2009.

s/ David J. Waxse

David J. Waxse
U.S. Magistrate Judge

cc:   All counsel and pro se parties